The Honorable, the Judges of the United States Court of Appeals for the Fourth Number 18-2376 Affinity Living Group v. Starstone Insurance Company. Mr. Salisbury. Good to have you here, Mr. Salisbury. It is a great privilege to be here, Your Honor. Thank you. I am Carl Salisbury. I'm counsel for Affinity Living Group. The Court has expressed a threshold interest in a question of jurisdiction that I will address initially unless... And you all agree on it. And we are on the same side. Both of you all are on the same side. Yeah. That's unusual for me, Your Honor. I don't think that I've ever argued an appeal in 30 years of practicing law or more when I've been on the same side as my adversary in an issue. That's just because you've never had a real jurisdictional problem. That may very well be correct, Your Honor. I understand the concern to be that Counts 3 and 4 of the four-count complaint in this case was dismissed upon consent without prejudice. And that the concern may be that this Court does not have Section 1291 finality or the parties haven't demonstrated Section 1291 finality such as to give the Court jurisdiction or, I guess, worse still perhaps, a concern that the parties have manufactured jurisdiction for the Court to hear an interlocutory order that would otherwise be non-appealable. And I hope that I can assuage the Court's concerns about that and put that to rest. The standard that I think still applies in a case such as this with respect to finality, even post-Microsoft v. Baker, which I'll address momentarily, but I think that the rule that still applies is this Court's rule in Domingo-Sugar. And that rule was that irrespective of whether the dismissal below was with or without prejudice, if, quote, the grounds for the dismissal made clear that no amendment could cure the defects in the plaintiff's case, the order dismissing the complaint is final in fact and appellate jurisdiction exists. And that's what we have here. And the reason that we have that here is that I am precluded by the rules of professional conduct as well as Rule 11. I am precluded from further proceeding and prosecuting my claims under Counts 3 and 4 unless or until this Court reverses the district court on Counts 1 and 2. Why is that? The reason for that is that Counts 1 and 2 of the complaint in this case seek to hold Starstone liable for insurance coverage and for the wrongful denial of insurance coverage and for a breach of contract as a result of that insurance coverage denial. That's Counts 1 and 2, which the district court dismissed with prejudice. Count 3 of the complaint in this case is for bad faith denial of insurance coverage. The very first element under fairly well settled North Carolina law, the very first element of a bad faith claim is proof that the claim was valid. We have a decision in this case that the claim was invalid. I can't, consistent with Rule 11, go back to Judge Eagles and argue that I can prove bad faith denial of insurance coverage when she's already concluded that the denial of coverage was valid and that the claim for coverage was invalid. Similarly, Count 4 of the complaint I can't continue to prosecute. And that's because it, too, depends upon a finding that affinity was correct as to Counts 1 and 2. I just want to make sure I'm understanding the procedural posture of the case, and I might not be. You started with, I think it was Domingo Sugar, and when a complaint is dismissed without prejudice, we ask whether there's any way in which this complaint could be amended. Correct. But was the complaint dismissed here? I thought only two of the counts. Two of the counts. Two of the counts were judged on, and then Homeland was dismissed from the case. But I didn't, I mean, aren't Counts 3 and 4 still sitting in front of the district court? Counts 3 and 4 have been dismissed without prejudice. The district court dismissed them? I thought that there was just a, you voluntarily dismissed those counts. And then, so what did the district court do after that? Is there something where the district court says, okay, this case is over, I'm dismissing the complaint? I'm sorry, I didn't mean to interrupt. No, no, no. We received an administrative notice that the case was over. And the complaint had been dismissed? And the complaint had been dismissed, yes. Is that in the appendix? I don't know. Okay. Because I just couldn't find anything after, but I may. It may well not be in the appendix, Your Honor. Okay, but the complaint has been dismissed in this case. Correct. But there are different defendants. In court. No. Well, yes and no. Yes and no. Starstone and Homeland. Correct. All the claims against Homeland were dismissed? With prejudice. With prejudice. 3 and 4 were only asserted against Starstone. Right, as far as it goes. So, if I can explain. Homeland. And they were dismissed without prejudice? 3 and 4 were dismissed without prejudice on consent, yes. Against Starstone. As against Starstone. So you've got two different defendants. The case is not over. The case is over. But against Homeland, you dismissed them, but you never brought them again. You dismissed counts 3 and 4. Maybe I'm confused about the whole thing, but it looks like to me, But you never brought them against Homeland. No. I'm sorry. That's really not what happened. Here's what actually happened in the case. Homeland Insurance Company is a primary insurance company. A primary layer of insurance. It provided a million dollars worth of liability insurance. Starstone is an umbrella coverage, an umbrella policy that sits above the Homeland policy. I brought claims against, claims counts 1 through 4, against Homeland and Starstone. And my argument to the court was, one of these two has to defend us. It's either going to be Homeland because they're primary, or it's going to be Starstone because they're the umbrella. But one of those two, these two carriers, has to defend us in the underlying case. The court concluded that there was no coverage under the primary Homeland policy because of exclusion in that policy. And so it dismissed all of the claims. But help me understand. I'm on page 44 of your, and this may not matter. I just want to understand. I'm on page 44 of the joint appendix, and I'm reading count 3. And you repeat the allegations, and you say, by reason of the foregoing, Starstone has breached his duty of good faith and fair dealing. No reference to Homeland at all. That's correct. And the reason for that is because the claims specifically against Starstone were that they made misrepresentations in the denial letter, which supports our claim for. So we didn't make those claims against Homeland. That's correct. But then that doesn't go back to my original question, which you dismissed counts 3 and 4 against Homeland. I never brought counts 3 and 4 against Homeland. I don't believe. I don't believe you did either. Right. But then I look at page 400 of the joint appendix, and it says it is stipulated and agreed that counts 3 and 4 with Homeland are dismissed. Well. I just want to make sure I understand what's happening, right? I mean, that's a little bit of confusion. That may. I think I can explain that. That may well have been a belts and suspenders order that was drafted by Homeland's counsel. There's no question. I don't believe there's any question that I brought counts 1 and 2. But the order was entered, right? Correct. Well, but there was somebody who drafted it. The order was entered under the court order. Right. There was never counts. We did not assert counts 3 and 4 against Homeland because we didn't have a claim for bad faith against Homeland. I didn't have any reason to believe that they had engaged in bad faith in what they did. So I didn't assert a claim for bad faith. So I asserted claims 1 and 2 against Homeland, and I asserted claims 1 through 4 against Starstone. When the court dismissed Homeland from the case, it did so on the basis of an exclusion. And that exclusion was quite clear. I have no basis for appealing the dismissal of Homeland because the exclusion was for an exclusion that fit the exact scenario that we have in this case. So I didn't dispute the dismissal with Homeland. But that was okay with me because in a circumstance where a company like Homeland is the primary policy, if there's no coverage under that primary policy, the umbrella policy drops down into the primary layer. So I didn't care, really, that Homeland had been dismissed. Well, I cared, but I didn't care. Let me ask you a question. If your notice of appeal, you did not appeal the dismissal of 3 and 4. Correct. Correct. And so I just want to make sure I understand what you believe happens. If the judgment on counts 1 and 2 were affirmed on the merits, would the dismissal of 3 and 4 have preclusive effect on your client? Yes. Tell me why that is, given that it was dismissed with prejudice. I don't disagree at all. I just want to make sure that you and I are on the same page about it. We are. I believe we are, and I think I can explain it to you. Counts 3 and 4 of the complaint cannot be prosecuted by me. I have no claim under counts 3 and 4 unless I win counts 1 and 2. Because the basis of counts 3 and 4, the threshold issue on counts 3 and 4, is that the claim by Starstone was wrongfully denied. And if you brought, so assume my hypothetical continues, you bring a new lawsuit against Starstone, hypothetically, I know you're not doing it, against Starstone for counts 3 and 4, is that issue or claim preclusion? Yes. Yes. I think it's... If I ask an either question, the answer can't be yes. I know. Right? So is it, I mean, and if you don't know, I'm not trying to get you to speculate, right? So if you don't know which one it is, that's fine. But in your view, is that issue or claim preclusion would apply in sort of the new complaint that you filed? In the new complaint that I filed... Hypothetical complaint. Hypothetical. Mr. Brown could come into court and he could say, this issue has been determined in a prior lawsuit. Mr. Salisbury has no claim for bad faith denial because the district court has concluded that the denial was valid. So it's really that what would be having the preclusive effect is the adjudication on 1 and 2? That's correct. So because I also am trying to figure... I understand that argument, but I guess I'm trying to figure out, given that 3 and 4 were dismissed without prejudice, would that dismissal by itself have any kind of preclusive effect? That dismissal by itself, no. Okay. But I believe that the effect of affirming the district court on counts 1 and 2, which I dearly hope this court does not do, but the effect of affirming on counts 1 and 2 would be that all of the claims against Starstone would be dismissed with prejudice.  So if we reversed on 1 and 2, 3 and 4, your dismissal on 3 and 4 would have no preclusive effect. You could refile 3 and 4. Correct. And that's why we did it, because I can't prosecute 3 and 4 now without a favorable ruling on 1 and 2. So this maybe gets us... I know you wanted to talk about Microsoft later, but I thought this is kind of what the court was concerned about in Microsoft and courts have been concerned about before Microsoft when it comes to without prejudice dismissals, that it allows for a kind of having your cake and eating it, too. Well, let's go up first, see how we do, before we decide whether we care about these claims. Here's the difference between Microsoft and our case, Microsoft v. Baker. Didn't we ask you about the Kena case? You did ask about the Kena case, and I know Your Honor authored that opinion, and I think that Kena and Microsoft v. Baker are similar in the following respect and why they're different from this case. In both Baker and Kena, further proceedings below in the district court or in arbitration, as the case may be, further proceedings below were available to the plaintiff in those cases, and the courts said, plaintiffs, you must proceed in the court below and resolve all of the claims that you have before you come up here, and you can't manufacture appellate jurisdiction in this court by simply deciding not to proceed in the court below with the claims that you could proceed in there, but instead dismissing them either with or without prejudice and hoping to get an appeal that would not otherwise be available to you. That's not this case. I cannot proceed below as to Counts 3 and 4. Why? Because the threshold issue on Counts 3 and 4 is that the claim was a valid claim and that Starstone did not wrongfully deny it. The district court has taken that element of those two claims away from me by deciding that the claim that we made for coverage was invalid and that the denial of the claim was not wrongful. So the distinction is the dependence. I mean, as you describe in the dismissal, you cannot revive 3 and 4 in consequence of the dismissal of Counts 1 and 2. In contrast to Kena and Microsoft, where the arbitration ruling and the class cert ruling were wholly independent and in no way determinative of the complaints that were dismissed voluntarily. Correct. The plaintiffs in Kena and the consumers in Baker still had litigating that they could and should have done below. It was available to them either in arbitration or in individual lawsuits because their class certification had been denied. They could have and should have litigated those claims below. I can't do that, inconsistent with Rule 11 and consistent with my obligations under the Rules of Professional Conduct because I cannot argue to the court below that I have a claim under Counts 3 and 4 without being able to establish the predicate that the claim for coverage was valid. So you say you cannot. I mean, that's not exactly true, right? Because one possibility, I've tried to think about what you could have done. I accept very well y'all's very good faith in trying to get this right, and I thought your attempt at it is an admirable one. I'm not sure it's sufficient, but it's admirable. I tried to think about what you could do. What you could have done, one example, and I want to hear are there any other examples from you, is that you could have talked to your colleague. He could have filed a motion for summary judgment based on the rationale of Counts 1 and 2, and you could have filed a response opposing it on the grounds that the court should reconsider its prior ruling, but acknowledging that absent reconsideration that you were opposed. I don't know why my adversary would ever take that tactic strategically. If I were in his position, I would not, and the reason I would not is because of Griggs. Remember that in Griggs, the court stayed the litigation in favor of a pending arbitration, and the plaintiff said, I'm not going to arbitrate, and the court dismissed the plaintiff's claims for failing to prosecute. That's the position that Mr. Brown has me in right now, because if we have to go back to the district court without a ruling on Counts 1 and 2, and you just remand us for further proceedings, I cannot in good faith argue that claims 3 and 4 are viable, because I don't have the basis for doing so. But that's a matter for the district court rather than us. But Mr. Brown, that may be true, but it's a matter for me as well, because I'm precluded by Rule 11 from making the argument. Mr. Brown has every incentive in light of Griggs to sit back, look, 3 and 4 is my burden, it's not his burden, and what is going to happen is eventually Judge Eagles is going to do to me what the judge did in Griggs. She's going to say, Mr. Salisbury, you need to do something about Counts 3 and 4, or I'm going to have to dismiss them for failure to prosecute. That's a good position for Mr. Brown to be in, because I am not going to be able to prosecute those cases in good faith, consistent with my ethical obligations. And the other alternative is, I get the problems that exist there, and the other alternative is a consent judgment dismissing them. The problem you have there is that the consent judgment probably binds you even on remand. If you win in the Fourth Circuit, you've already entered a consent judgment that binds you. Thank you. No, no, I'm trying to figure it out. Is there anything else? I mean, you obviously have lived in this world a little bit. Is there any other possibility, and you can talk about Rule 54B if you want to, but you don't need to from my perspective, maybe somebody else. But are there any other possibilities that you can think of as an officer of the court? I understand it might not be in your interest, but that you can think of that would permit you to preserve 3 and 4 based on the grounds that you raised for 1 and 2, while still having this court review the decision on 1 and 2. I'll be as candid as I can be with Your Honor. I have spent sleepless nights trying to figure out, once I found myself in this box, I've spent sleepless nights trying to figure out just what Your Honor has suggested that I ought to be able to do, and I have not been able to come up with any kind of strategy that would permit me to argue. I'm guessing you consider this, and I want to know why you ruled it out. You couldn't, under Rule 54B, ask the district court to direct entry of a final judgment as to some but not all of the claims because there was no just reason for delay? Yes, I could have done that. And if you send me back to do that, then that's what I will have to do. Our court has set out a standard for what a Rule 54B request requires, and I thought one of the things that we have directed the district court to look at, and hence you to look at, is whether the two sets of claims are related in any way. And it is only where they are unrelated that a 54B order is appropriate, but where they are, as in this instance, completely intertwined, as your argument is. Maybe I'm wrong about this. Tell me if I'm wrong. I interpret the case law as suggesting that where they are intertwined and not independent of each other, that a Rule 54B order is not available. It's precluded, and I agree with that, Your Honor. I'm certain that that's right. So I'm in a box. And if you send me back, I risk losing 3 and 4 without ever having an opportunity to have an appeal heard on 1 and 2. Because of grace. The red light's on there. I know. Thank you, Your Honor. Mr. Brown? Thank you. May it please the Court, David Brown here on behalf of Defendant Starstone Specialty Insurance Company. I appear here with Martha Brown, who is my law partner and my wife. I just want to follow up on a couple of the comments, and particularly the questions that were raised. I think it is accurate that the only thing I could think of in kind of responding to the discussion you were having with counsel is exactly the first option you put out, which is the summary judgment idea. And I guess to back up and kind of lead into it. So respond to his argument, and I assume very good faith. I know you're an excellent lawyer. But he is right that there is no incentive for you to ever file a summary judgment motion. Now, there probably wasn't any necessary incentive to file a dismissal either. But isn't that also a problem? It is. It is. And I agree with my colleague's point on that. And I guess just to back up to the beginning, I would say that when we have the complaint, the initial complaint seeking coverage under accounts 1 and 2 from both Homeland and Starstone, and then seeking the extra contractual damages under accounts 3 and 4 against Starstone only, the extra contractual claims were not pled against Homeland. I candidly think that the dismissal of page 400 of the record was maybe, I think counsel said, belt suspenders unneeded by counsel for Homeland. But in any event, it's clear that there were coverage claims asserted against Homeland and Starstone, accounts 1 and 2, only extra contractual claims against Starstone and accounts 3 and 4. So looking at that from our perspective, we believe that it's crystal clear here that there is no coverage. And we did a lot of briefing on coverage. We can talk about that. But just put that aside for now. The North Carolina Supreme Court test on duty to defend is, as it is pretty much around the country, a comparison test analysis, meaning that you take the four corners of the insurance policy, you take the four corners of the complaint against the insured, you analyze those documents and see if this insurance policy covers what's alleged in this complaint, nothing less, nothing more. That can and, frankly, is commonly disposed of on the pleadings because the complaint and the policy were put in the pleadings. And I guess from our perspective, there was no need for discovery. There was no need for really anything on that legal question. And if the court found, as we believe right out of the box it should, and as the court did, that there was no coverage based upon a plain reading of the policy and a plain reading of the False Claims Act complaint against affinity, then that would end the coverage inquiry. And practically speaking, that would end the extra contractual claims as well. We didn't move for judgment on the pleadings or the extra contractual claims for the very simple reason that more often than not, those claims, at least in my experience, trial judges tend to want some discovery on those claims before then granting dispositive relief under Rule 56. So we pursued the motion for judgment on the pleadings under Rule 12C as the most economical and direct way for the trial court to look at the legal issue before it, namely, again, does this complaint trigger or not trigger coverage under this policy? In our mind, it was very clear from the beginning that it did not, and that was that. When the court ruled as it did in our favor on those points, I agree that that was not only dispositive of Counts 1 and 2, there could be no bad faith claim going forward on those extra contractual claims. We could have moved for summary judgment on that, I suppose, and followed the route you indicated. There are some problems with that. The proposal was made to Starstone to dismiss Counts 3 and 4 without prejudice, and we were amenable to that for the simple reason that we believe in resolving claims on the merits, and we thought it would be appropriate for this court to look at the coverage issue on the merits. So that's kind of how we got here. I don't think there was any gamesmanship to any of that. I think the parties each believe that there is a straightforward coverage issue here that needs to be resolved. And do you agree with your colleague that the reason this is different from Microsoft and Judge Keene's opinion in Kenna, if I'm pronouncing that correctly, is the dependence of the 3 and 4 on 1 and 2? Well, yes, and to take that a step further, as I read Microsoft v. Baker in Kenna, there was never a ruling on the merits of anything below. There was this gamesmanship, if you will, to invoke appellate jurisdiction where it might not otherwise exist. And so that gamesmanship was what was being frowned upon. Here, there was an adjudication on the merits. But even if there's an adjudication, I mean, imagine the hypothetical where the case involves, forget joinder problems, but involves two contractual claims, and then there was a car wreck that happened in the parking lot, and you dismiss the two contractual claims, an attempt to get rid of the car wreck claims by voluntary dismissal might be problematic if you dismiss them contingent in some way on counts 1 and 2 in that scenario. I mean, so I do think the dependence matters to some degree, no? I agree with that. I think in the hypothetical Your Honor proposes, a Rule 54B certification would actually be appropriate. Right. I'm sorry, what would be appropriate? I think in the hypothetical that Judge Richardson offered, I think a Rule 54B certification would be appropriate because the contract claim and the car wreck claim would be totally separate and not dependent on one another. And that would be, I think, the kind of thing that Rule 54B exists for in terms of the certification. So that would be my response to that. And so, in other words, because another potential distinction, and I think that's the right one, but I just want to make sure that I'm understanding it right, because the other potential distinction with Microsoft and Kenna is that both of those cases included the voluntary dismissal of all claims after a, you know, but that distinction alone is not really where we are. We're really focused on the idea of the dependence between the claims being dismissed and not, not the fact that it's just some claims and not all claims. I think that's accurate. And I guess just to kind of play out a little bit further in response to some questions that were asked earlier by my colleague about what does remand look like. You know, our view, again, is this is a very clear coverage question that can, it should be, and was by the district court resolved on the pleadings, on the complaint, and the policy analysis that this court should affirm. If this court were to decide that there was coverage under the policy for some reason and remand that case, you know, might affinity try to file a new lawsuit for bad faith and seek to join those perhaps, you know, I express no opinion on whether that would be a procedurally appropriate kind of mechanism. I will say that, you know, on the merits, we certainly have a very good faith basis to take the coverage position we've taken for all the reasons laid out by Judge Eagles and all the reasons articulated in our briefs. And so I think that would be, at most, this is a contract dispute. And just as an aside on that very point, you know, most of what I do in my practice is insurance coverage litigation for insurers and policyholders. What I see more often than not is a bad faith claim in every breach of contract claim. And I'm not saying that bad faith claims are not occasionally appropriate, but they seem to be asserted every time there is a breach, honest dispute about what the insurance policy means. And then when you have that, you get into, candidly, some of these procedural and administrative issues that's kind of brought us here today. So that would be my response. I'm happy to talk about the jurisdictional question if there are further questions about that. Otherwise, I'll turn to the merits of the coverage issue before the court. Okay. I want to kind of pick up on what I was just articulating about exactly. What is the, what, how does one go about, how does a court go about analyzing a coverage issue? So I've talked a little bit about the comparison test, about exactly the two documents that matter, the insurance policy, as well as the complaint against the insured. And here we have a QTAM False Claims Act case against the policyholder. And the underlying complaint is at page, begins at page 49 of the record, and the claims for relief, which are what matters here, begin at page 97 of the record. And what the Supreme Court of North Carolina has indicated in the Hardingsville v. Buzsoff case is that we look to the claims for relief against the insured to analyze coverage. There might be a lot of factual predicate, a lot of factual background, but we have to look at exactly what the insured was sued for in order to analyze whether there is a duty to defend, whether there is coverage under the policy. So I think we have to begin at what was the insured sued for. And fundamentally, as indicated on page 97 of the record, count one, there are only two claims in the lawsuit, a Federal False Claims Act claim and a State False Claims Act claim, and they're mirror images of one another. So what was sued for, paragraph 165 of the complaint, that the defendants knowingly submitted claims for special care unit services that were not provided. Paragraph 66, that defendants made or caused the making of false statements to Medicaid about exactly what was provided. Paragraph 167, that defendants conspired to knowingly submit claims or caused claims to be submitted to Medicaid for services that were not provided. Paragraph 168, again, defendants conspired to knowingly make, use, or cause the making or use of false statements or records indicating to Medicaid that services had been provided that actually were not provided. That's it. That's what the insured was sued for. False Claims Act claim, again, in count one and count two of the North Carolina statute, they're the same. So the allegation is not that there was any sort of bad care. The allegation is that the government was billed for care that was not provided. So we then turn to the insurance policy. Why doesn't that, just as a matter of common sense, sound like it is a claim that arises out of the rendering of medical professional services? They got billed for services that either weren't provided or were provided at a substandard level. Well, we have to start with the policy language. That's what I was trying to quote, yeah. Yeah. So the policy begins on page 187 in the insuring agreement. Well, the policy begins on page 173 of the record, but the insuring agreement that has the language John refers to is on page 187, and it indicates that the insurance company will pay on behalf of the insured damages resulting from a claim arising out of a medical incident. So the damages have to result from a claim that arise out of a medical incident. And then we have on page 205 of the record the definitions of medical incident, which is an alleged or actual act in the insured rendering or failure to render medical professional services. Okay. So let me stop you right there.  So failure to render medical services. Failure to render medical services. And a claim for billing for the failure to render medical services seems like it would arise out of the failure to render medical services. And so we come directly to the state capital case, which is the Supreme Court of North Carolina case on the arising out of language. And I think there's a step before we get there, so let me just say this and then come directly to your question. The first question is, is the claim for improper billing a medical incident in and of itself? And I think the plain answer to that is no. The next question is, does a claim for a medical incident related to a medical professional service somehow arise out of the rendering or failure to render care? So we have to look at North Carolina all on this point. And the state capital case from the Supreme Court of North Carolina is, of course, as you know from the briefing, the case, the seminal case in North Carolina that talks about this arising out of language. And so what the state capital case says, and the state capital case, as you may recall, is a case where there was a rifle in the back of a pickup truck. And people were out deer hunting. The court said, native of rural North Carolina, the court said the transportation of firearms is an ordinary and customary use of a pickup truck. So what the court said is that they were going out deer hunting. A guy saw a deer, goes into the pickup truck, accidentally shoots his friend, and that therefore the shooting arose out of the use of the pickup truck. And the court articulated the exact standard. The parties do not contemplate a general liability insurance contract. Same as here. There must be a causal connection between the use and the injury. This causal connection may be shown to be an injury, which is the natural and reasonable incident or consequence of the use, though not foreseen or expected, that the injury cannot be said to arise out of the use of an automobile if it was directly caused by some independent act or intervening cause wholly disassociated from, independent of, or remote from the use of the automobile. So the question is, is the billing causally connected to the failure to join your profession? In the state cap, the way you're describing it, I'm questioning my recollection. I thought in state capital the court said that the gun was covered. Correct. That is what the court held. The court held that the use of the gun did arise out of the use of an automobile because having a gun in your pickup truck was an ordinary use of the automobile. Right, which maybe wouldn't be my natural read, but what it suggests here, I mean, your natural read might have gone the other way, and I'm not sure the natural read might not have gone your way as well because there's an intermediate step there and there's an intermediate step here. Between the provision of service and the billing, and just like there, the use of the truck, right, that is driving it and storing things in it, and pulling a gun out of it. So there's an intermediate step in both that we might think destroys the but-for cause that we're talking about. But in state capital they seem to say even where there's an intervening arising from covers it as long as it's not wholly disassociated. How do we find that the billing for the failure to provide services is wholly disassociated from the failure to provide services? The billing respectfully arises out of billing. It doesn't arise out of the rendering or failure to render a service. The policy covers, if you will, medical negligence type incidents. The patient or someone says, you know, or a resident says, my care was poor and therefore I'm entitled to coverage. That's the same thing with the gun. Why is that different from the gun, right? Like I'm pulling, you know, it's not from using the truck. Like it doesn't arise from the use of the truck. It arises from pulling the trigger on the gun. Yes, those are distinct. I might have naturally read them as being distinct. But after state capital, and we're obviously bound to follow that law, suggests to me that their interpretation of arising from is perhaps broader than the natural reading. I think what state capital suggests to federal district courts sitting in diversity and to this court reviewing those decisions is that you take a case-by-case kind of common sense view of what is disassociated from what. And so, for example, if you say, well, anything that happens, anything that Affinity gets sued for because it renders professional care, they're automatically covered. If they get sued for a breach of contract claim because they didn't pay their vendor, is that covered under the policy because they wouldn't have had to pay the vendor but for the fact they provide professional care? Of course not. That would be absurd. If they get sued on a Title VII claim for gender discrimination, well, they wouldn't have had that employee but for the fact that that employee is providing professional services. But would that be covered as a professional liability claim? Of course not. That would be absurd. So there has to be some line between the operation of the business that is within the control of the policyholder. But the example you give are two steps removed. This is one step removed. And it seems like state capital suggests that one step removed is good enough. I respectfully disagree with that. I understand the point. I know you have to. I'm just saying, but tell me why shouldn't I read state capital, and then I will turn and let them ask, why shouldn't I read state capital as saying that one step removed is good enough to arise from under the contractual language? Right. Well, state capitals, I don't, respectfully, I don't think state capital talks about one step removed or two step removed or anything else. I think what state capital says is you have to look at what happened. In that case, it was the gun. In this case, it's the false billing. And is that related to or disassociated from what the policy covers? And in state capital, the policy covered the use of a motor vehicle. So the court said that he was getting, unloading, and loading things. There are a long line of cases in North Carolina that say loading and unloading from a car is using it. And it wasn't like he went out 50 feet away and then took the shot. He was getting the gun out of the car when it accidentally went off. And so the court said that is loading and unloading the vehicle. That's an ordinary use of the vehicle. In this case, false billing, defrauding the government, and, again, I'm not saying that's what happened. I'm saying that's what's alleged. But false billing and defrauding the government is not an ordinary incident of providing professional care. False billing is wholly disassociated from that, as the court correctly found. And, frankly, as every court in the country that has looked at the question of whether a professional liability policy does or does not cover a False Claims Act claim has found it is not covered. There is no case in the country that has found that, some of which we cite all these cases in our papers. The Zurich case from the Tenth Circuit deals with both two different policies, one that has calls by language and one with the rising out of language. The health care industry case from the Seventh Circuit uses a rising out of language. The MSO Washington case from the Federal District Court of Washington uses a rising out of language. So those states basically have a state capital type analysis, and all the courts that have looked at it, whether the courts are looking at calls by language or a rising out of language or resulting from language, have all said there's a disassociation from the defrauding of the government and the rendering of professional services. So we would ask the court to entertain this on the merits and to affirm the district court and find that there's no coverage, ending the jurisdictional question as well. Thank you for your time. Thank you, Mr. Brown. We'll come down and greet counsel. Oh, I'm sorry. No, he didn't save me time. Nobody got any rebuttal, right? I took it all. We're going to adjourn court for today and greet counsel, and we appreciate you all coming. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Pamela A. Harris, Julius N. Richardson